## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2018-10-4048

LATRENT REDRICK
c/o Friedman and Gilbert
55 Public Square Suite 1055
Cleveland, OH, 44113

-VS-                                                      **SUMMONS**

CITY OF AKRON
161 S HIGH ST
202 OLIVER OCASEK GOVT OFFICE BLDG
Akron,   OH   44308

**TO the following:**

CITY OF AKRON
161 S HIGH ST
202 OLIVER OCASEK GOVT OFFICE BLDG
Akron, OH   44308

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

SARAH   GELSOMINO
55 Public Square, Suite 1055
Cleveland, OH

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

October 1, 2018

**Exhibit  A**

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2018-10-4048

LATRENT REDRICK
c/o Friedman and Gilbert
55 Public Square Suite 1055
Cleveland, OH, 44113

-VS-                                                                    **SUMMONS**

CITY OF AKRON
161 S HIGH ST
202 OLIVER OCASEK GOVT OFFICE BLDG
Akron,  OH  44308

**TO the following:**

UTOMHIN OKOH
Akron Police Dept
217 S. High St
Akron, OH  44308

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common
Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

SARAH   GELSOMINO
55 Public Square, Suite 1055
Cleveland, OH

**You are hereby summoned and required to serve upon the attorney listed above, or upon the
party if they have no attorney of record, a copy of an answer to the COMPLAINT within
twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your
answer must be filed with the Court within three days after the service of a copy of the answer on
the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in
the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

October 1, 2018

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2018-10-4048

LATRENT REDRICK
c/o Friedman and Gilbert
55 Public Square Suite 1055
Cleveland, OH, 44113

-VS-                                                                    **SUMMONS**

CITY OF AKRON
161 S HIGH ST
202 OLIVER OCASEK GOVT OFFICE BLDG
Akron,  OH  44308

**TO the following:**

SCOTT LIETKE
Akron Police Dept
217 S. High St
Akron, OH  44308

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

SARAH   GELSOMINO
55 Public Square, Suite 1055
Cleveland, OH

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

October 1, 2018

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2018-10-4048

LATRENT REDRICK
c/o Friedman and Gilbert
55 Public Square Suite 1055
Cleveland, OH, 44113

-VS-                                                                                         **SUMMONS**

CITY OF AKRON
161 S HIGH ST
202 OLIVER OCASEK GOVT OFFICE BLDG
Akron,  OH   44308

**TO the following:**

JOHN TURNURE
Akron Police Dept
217 S. High St
Akron, OH   44308

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

SARAH   GELSOMINO
55 Public Square, Suite 1055
Cleveland, OH

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

October 1, 2018

# IN THE COURT OF COMMON PLEAS
## SUMMIT COUNTY, OHIO

**LATRENT REDRICK,**
c/o Friedman & Gilbert
55 Public Square, Suite 1055
Cleveland, Ohio 44113,

and

**JAMON PRUIETT**
c/o Friedman & Gilbert
55 Public Square, Suite 1055
Cleveland, Ohio 44113,

      Plaintiffs,

-vs-

**CITY OF AKRON, OHIO**
202 Ocasek Government Building
161 South High Street
Akron, Ohio 44308,

and

**JOHN TURNURE**
c/o Akron Police Department
217 S. High Street
Akron, Ohio 44308,

and

**UTOMHIN OKOH**
c/o Akron Police Department
217 S. High Street
Akron, Ohio 44308,

and

**SCOTT LIETKE**
c/o Akron Police Department
217 S. High Street
Akron, Ohio 44308

      Defendants.

CASE NO.:

JUDGE:

**COMPLAINT**

**JURY DEMAND ENDORSED HEREON**

Plaintiffs Latrent Redrick and Jamon Pruiett for their complaint against Defendants City of Akron, John Turnure, Utomhin Okoh, and Scott Lietke allege as follows:

## INTRODUCTION

1.       This is a civil rights action. In the early morning hours of October 1, 2017, Latrent Redrick, 21 years old at the time, and Jamon Pruiett, 23 years old at the time, were walking down the street after leaving a friend's house when Defendant Officer John Turnure shot them both multiple times from behind. Defendant Turnure shot at Plaintiffs without provocation or justification. Defendant Utomhim Okoh stood by, failing to intervene to stop this brutality, and subsequently falsified police reports and provided false testimony in furtherance of covering up Turnure's unjustified use of force.

2.       Defendant Turnure never announced his presence nor warned Redrick and Pruiett before he opened fire on them, discharging his weapon thirteen times.

3.       Latrent Redrick, who had a concealed carry license, was legally in possession of a lawful firearm at the time Defendant Turnure shot him and Pruiett. Redrick never pointed his firearm or otherwise present a threat of death or great bodily harm to Turnure, Okoh, or anyone else.

4.       This shooting was without any lawful justification and in violation of Redrick's and Pruiett's fundamental rights under the U.S. Constitution and Ohio law.

5.       In an attempt to justify their illegal conduct, Defendants Turnure and Okoh conspired to falsify police reports and gave a false version of events to their supervisors, the public, and a jury, causing Latrent Redrick and Jamon Pruiett to be arrested and prosecuted for felony charges.

2

6.      Defendant Leitke initiated and continued false charges against Jamon Pruiett, causing his false arrest and malicious prosecution, without probable cause, by completing false police reports, failing to conduct a thorough investigation of the incident, and providing false testimony.

7.      Jamon Pruiett was acquitted by a jury of charges against him and the prosecution terminated in his favor.

8.      The prosecution dropped all felony charges against Latrent Redrick and he entered a no contest plea to a mere misdemeanor.

9.      The City of Akron is likewise at fault for the shooting of Redrick and Pruiett through the written and unwritten policies, practices and/or customs of civil rights violations, and unconstitutional practices of the City of Akron and its Police Department.

10.     As a result of this shooting, Redrick and Pruiett suffer permanent pain and disability, and continuing psychological trauma. Plaintiffs and their families are devastated by these irreparable and lifechanging injuries. This action seeks accountability for violations of Plaintiffs Redrick's and Pruiett's constitutional rights. Plaintiffs Redrick and Pruiett also seek damages and other relief under state law for assault and battery and Defendants' willful, reckless and wanton conduct, and for the false arrest and malicious prosecution.

## JURISDICTION AND VENUE

11.     The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States and the State of Ohio.

12.     Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

3

13.     Venue is proper in as the events giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

14.     Plaintiffs Latrent Redrick and Jamon Pruiett, at all times relevant to the allegations made in the complaint, resided in the State of Ohio.

15.     Defendant Officer John Turnure was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Akron, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

16.     Defendant Officer Utomhim Okoh was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Akron, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

17.     Defendant Officer Scott Lietke was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Akron, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

18.     Defendant City of Akron was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant City of Akron is a "person" under 42 U.S.C. § 1983. Defendant City of Akron is the employer and principal of Defendants Turnure, Okoh, and Lietke, and is responsible for the policies, practices, and customs of its Police Department.

## FACTS

19.     Latrent Redrick and Jamon Pruiett are brothers. They were 21 years old and 23 years old respectively at the time of the events giving rise to this complaint.

4

20.     On October 1, 2017, in the early morning hours, Plaintiffs were leaving a friend's house with a group of their friends.

21.     At the same time, the Zar Bar, located just below the apartment they were leaving, was letting out for the night. The streets were full of people leaving Zar.

22.     Redrick is licensed to carry a concealed weapon. On October 1, 2017, he was in possession of his legal, licensed firearm.

23.     Outside Zar, a group of men unknown to Plaintiffs and their friends began to challenge and threaten them. This threatening interaction continued as Plaintiffs and their friends walked down the street toward their car.

24.     In an attempt to deescalate the situation, Redrick showed the group of men his legal firearm, explaining to them that he was licensed to carry a gun.

25.     Redrick never pointed or attempted to point his gun at the group of men.

26.     Unbeknownst to Plaintiffs, Defendants Akron Police Officers Turnure and Okoh were approaching them.

27.     Defendant Turnure walked up behind Redrick and Pruiett without Plaintiffs' knowledge.

28.     Redrick did not point or attempt to point his legal firearm at Defendants or anyone else and did not place Defendants in any reasonable fear of imminent death or serious bodily harm to themselves or others.

29.     Defendants failed to announce their presence and to order Redrick to drop his legal firearm. Turnure failed to warn Plaintiffs of his intention to shoot.

30.     Defendant Turnure opened fire upon Redrick, shooting him multiple times in the back. Redrick fell to the ground, bleeding, and dropped his gun.

5

31.    Pruiett also fell to the ground, terrified for his own life and the life of his brother.

32.    Redrick and Pruiett did not know who was shooting at them, or from what direction. They assumed someone from the group of men who had been threatening them was attacking and shooting at them.

33.    Once on the ground, Pruiett reached for Redrick's gun in an attempt to defend his life and his brother's life against an unknown, unidentified shooter.

34.    Before Redrick or Pruiett could turn to see who was shooting, Defendant Turnure shot Pruiett multiple times while he was laying on the ground.

35.    Still unaware of the identity of the shooter, in an effort to stop the shooting and to save himself and his brother, Pruiett fired one shot back toward the stream of bullets flying at Pruiett and Redrick.

36.    Defendant Turnure nonetheless shot one more round at Pruiett, and then finally ceased his vicious assault.

37.    Redrick and Pruiett remained on the ground, each shot at least six times, bleeding onto the pavement and feeling tremendous pain.

38.    Within moments of his last shot, Defendant Turnure reloaded his firearm, returned to Plaintiffs, and aimed his gun at them as they lay on the ground, unarmed and severely injured.

39.    Defendant officers failed to offer support or aid to Plaintiffs.

40.    Redrick begged for assistance from Turnure. Defendant Turnure did nothing to help Redrick. Instead, Turnure said, "Fuck you," and continued to point his firearm at Redrick and Pruiett.

41.    This shooting was unjustified, objectively unreasonable, and constituted excessive force, in violation of Redrick's and Pruiett's constitutional rights.

6

42.     Plaintiffs did not present a threat to the safety to any of the Defendant Officers or to any other person.

43.     Although both Defendant officers were wearing functioning body cameras, they both failed to activate their cameras before approaching or engaging with Redrick and Pruitt, and further failed to activate their cameras once Turnure began shooting.

44.     Though Okoh activated his camera after the incident, when he walked up to Turnure to talk to him, Turnure thumped Okoh's chest and Okoh turned the camera off before further discussion.

45.     Defendant Officers and other members of the Akron Police Department intentionally turned off and/or muted their body cameras, to ensure that no record of their conversations regarding the shooting incident were preserved.

46.     Fortunately, the shooting was captured by a nearby surveillance camera and can be viewed at https://youtu.be/wK97XCMZOu8.[1]

47.     Redrick was subsequently transported via ambulance to Akron General Hospital. His life-threatening injuries required emergency trauma surgery.

48.     Redrick was shot six times in his back, buttocks, elbow, and ankle.

49.     Pruiett was transported via ambulance to Akron City Hospital. He also required emergency trauma surgery for life-threatening injuries.

50.     Pruiett was shot at least six times in his foot, thigh, knee, forearm, shoulder, and chest.

51.     Pruiett awoke from his operation to find himself shackled to his hospital bed.

---

[1] On this video, the shooting incident starts at approximately 3:39 in the footage.

7

52.     Defendant Lietke and another Akron Police officer interrogated him about the shooting.

53.     This interrogation took place as Pruiett was first waking from anesthesia and was groggy and in severe pain from surgery. He was not mirandized, did not have access to a lawyer, and was terrified by the aggressive police presence in his hospital room.

54.     Pruiett was arrested one day after the shooting and within hours of awaking from his surgery. He was removed from the hospital and taken to the Summit County Jail.

55.     Pruiett remained in jail until the following evening.

56.     Within 24 hours, Defendant Lieke charged Jamon Pruiett with felonious assault based only on false information and misrepresentations provided by Defendants Turnure and Okoh during their walkthroughs of the scene to Defendant Lietke, representatives from the police union - the Fraternal Brotherhood of Police (FOP), Summit County assistant prosecutor Brian Loprinzi, and City of Akron Chief Prosecutor Craig Morgan.

57.     In the intervening period between the shooting and the criminal jury trial, Defendant Officers jointly prepared and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give false, incomplete, and misleading versions of the events to their superiors and to the public.

58.     Defendants' failures to activate and/or properly utilize their body-worn cameras permitted them to conspire regarding a false version of events to justify this unlawful shooting.

59.     To cover up their misconduct and the misconduct of fellow officers, Defendants falsely claimed that Plaintiffs posed a threat sufficient to justify the use of deadly force.

8

60.     To cover up their misconduct and the misconduct of fellow officers, Defendants gave false testimony before the Grand Jury and/or the criminal trial jury, stating that Plaintiffs posed a threat sufficient to justify the use of deadly force.

61.     For over ten months, Pruiett faced serious felony charges and the threat of a minimum prison term of ten years if convicted. He was forced to engage criminal defense counsel and defend himself against the fabricated charges at a jury trial.

62.     On August 8, 2018, a jury acquitted Jamon Pruiett of all charges and the case was terminated in his favor.

63.     In violating Plaintiffs' rights, Defendants engaged in willful, wanton, reckless, and/or negligent conduct.  This unconstitutional conduct and willful, wanton, reckless, and/or negligent conduct was the direct, actual, and proximate cause of Plaintiffs' injuries.

64.     Defendants' actions were taken jointly, in concert, and with shared intent.

65.     As a direct and proximate cause of Defendants' conduct, Redrick and Pruiett suffered and continue to suffer lasting injuries including, inter alia, physical harm and pain, permanent disability, serious and severe mental, emotional, and psychological injuries, economic losses, loss of liberty, and damages.

### FIRST CLAIM FOR RELIEF

### State Law Claim for Assault and Battery by Latrent Redrick and Jamon Pruiett against Defendant Turnure

66.     All of the foregoing paragraphs are incorporated as though fully set forth here.

67.     The conduct of Defendant Officer Turnure with respect to Latrent Redrick and Jamon Pruiett created in Plaintiffs the apprehension of an imminent, harmful, and offensive

9

touching and constituted a harmful and offensive touching, knowingly and without legal justification.

68. Defendants are jointly and severally liable for this conduct.

## SECOND CLAIM FOR RELIEF

**State Law Claim for Negligence - Willful, Wanton, and/or Reckless Conduct
by Latrent Redrick and Jamon Pruiett
against Defendants Turnure, Okoh, and Lietke**

69. All of the foregoing paragraphs are incorporated as though fully set forth here.

70. Defendants failed to exercise due care and acted in a willful, wanton, and reckless manner while engaged in police functions and activities that culminated in the above-described damages and injuries to Latrent Redrick and Jamon Pruiett.

71. Defendants' reckless, wanton, and/or willful conduct proximately caused the physical and psychological damages to Latrent Redrick and Jamon Pruiett.

72. As a direct and proximate result of the misconduct of the Defendant Officers, Latrent Redrick and Jamon Pruiett suffered and continues to suffer injuries and damages.

73. Defendants are jointly and severally liable for this conduct.

## THIRD CLAIM FOR RELIEF

**State Law Claim for False Arrest
By Jamon Pruiett
Against Defendants Turnure, Okoh, and Lietke**

74. All of the foregoing paragraphs are incorporated as though fully set forth here.

75. Defendants intentionally and unlawfully detained and caused the arrest of Jamon Pruiett without lawful privilege, against his consent, and without probable cause.

76. Jamon Pruiett's arrest, unsupported by probable cause, was in violation of the law of the State of Ohio.

77.     Defendants caused the illegal arrest, detention, imprisonment and institution of legal proceedings against Plaintiff Pruiett.

78.     Defendants' actions were willful, wanton, and/or reckless.

79.     Defendants' actions and conduct constitute false arrest, in violation of Ohio law.

80.     As a direct and proximate result of Defendants' misconduct, Jamon Pruiett suffered and continues to suffer, injuries, including but not limited to the loss of liberty, emotional distress, loss of reputation, costs, and other damages as set forth in this Complaint.

81.     Defendants are jointly and severally liable for this conduct.

### FOURTH CLAIM FOR RELIEF

**State Law Claim for Malicious Prosecution
By Jamon Pruiett
Against Defendants Turnure, Okoh, and Lietke**

82.     All Paragraphs contained in this complaint are incorporated as if fully rewritten herein.

83.     Defendants acting maliciously, instituted, participated in, or continued the prosecution of Jamon Pruiett without probable cause.

84.     As a consequence of the criminal prosecution, Jamon Pruiett was unlawfully seized and deprived of liberty.

85.     Jamon Pruiett's criminal prosecution was terminated in his favor when a jury acquitted him of all charges.

86.     Defendants committed these actions intentionally, maliciously, culpably, in bad faith, and/or in a willful, wanton, or reckless manner and in reckless disregard of Jamon Pruiett's rights.

11

87. As a direct and proximate result of this malicious prosecution, Jamon Pruiett suffered injuries, including but not limited to, the loss of liberty, emotional distress, and other damages as set forth in this Complaint.

88. Defendants are jointly and severally liable for this conduct.

## FIFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 Claim for Malicious Prosecution
### By Jamon Pruiett
### Against Defendants Turnure, Okoh, and Lietke

89. All Paragraphs contained in this complaint are incorporated as if fully rewritten herein.

90. Defendants caused, instigated, influenced, or participated in the decision to prosecute Jamon Pruiett, knowing there was no probable cause for the criminal prosecution.

91. The charges were terminated in favor of Jamon Pruiett.

92. Defendants made statements to prosecutors, supervisors, a grand jury, and a criminal trial jury with the intent of exerting influence to institute and continue the judicial proceedings.

93. Defendants deliberately engaged in arbitrary and conscience-shocking conduct that contravened fundamental canons of decency and fairness and violated Jamon Pruiett's substantive due process rights and in violation of the Fourteenth and Fourth Amendments to the United States Constitution.

94. As a direct and proximate cause of Defendants' misconduct, Jamon Pruiett suffered and continues to suffer injury and damages as set forth in this Complaint.

95. Defendants are jointly and severally liable for this conduct.

12

## SIXTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 Claim for Unconstitutional Seizure
### By Latrent Redrick and Jamon Pruiett
### Against Defendants Turnure, Okoh, and Lietke

96.     All of the foregoing paragraphs are incorporated as though fully set forth here.

97.     The actions of Defendants as alleged in the preceding paragraphs, violated Latrent Redrick's and Jamon Pruiett's rights under the Fourth Amendment to the United States Constitution to be secure in their persons against unreasonable seizure, and their right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

98.     Latrent Redrick and Jamon Pruiett were subjected to the use of excessive force in violation of their Fourth Amendment rights.

99.     Defendants Turnure, Okoh, and Lietke further deprived Jamon Pruiett of his right to be free from unreasonable seizure by causing his arrest, without lawful privilege, against his consent, and without probable cause, in violation of the Fourth and Fourteenth Amendments to the United States Constitution or failing to intervene to prevent these unreasonable seizures.

100.    Defendants acted intentionally, and in a willful wanton, and/or reckless manner.

101.    The actions of the Defendant Officers as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations set forth above and of Latrent Redrick's and Jamon Pruiett's injuries.

102.    Defendants are jointly and severally liable for this conduct.

13

### SEVENTH CLAIM FOR RELIEF

**42 U.S.C. § 1983 *Monell* Claim**
**By Latrent Redrick and Jamon Pruiett**
**Against Defendant City of Akron**

103.    All of the foregoing paragraphs are incorporated as though fully set forth here.

104.    Defendants acted pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of the City of Akron and its Police Department.

105.    The City of Akron, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

106.    Despite the facts and circumstances surrounding the shooting of Latrent Redrick and Jamon Pruiett that clearly demonstrate that the actions of the Defendants were unreasonable and unlawful, upon information and belief, the City of Akron has failed to effectively investigate or impose any discipline on Defendants for their illegal behavior and false testimony at the grand jury and at trial of the criminal charges against Plaintiffs.

107.    Akron Police fail to conduct independent and unbiased investigations into alleged misconduct of their officers, including police-involved shooting investigations.

108.    Defendant Lietke was responsible for conducting the shooting investigation to determine whether Turnure's shooting of Plaintiffs was justified, however he failed to interview essential witnesses, including Defendant Okoh, and instead attempted the justify the shooting by pursuing felony charges against Plaintiffs.

109.    Defendant Okoh has been involved in two other shooting incidents during his tenure as an Akron Police Officer. Upon information and belief, no truly independent investigation

14

has ever been conducted of his actions in any use of force incident and he and other officers involved in those shootings have not been properly supervised or disciplined by the Akron Police Department.

110.    At all times relevant, the Defendant City of Akron and its Police Department had interrelated de facto policies, practices, and customs which included, *inter alia*:

a.  the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution;

b.  the police code of silence;

c.  the failure to properly investigate the use of excessive and unreasonable force, false arrest, and/or malicious prosecution against civilians, particularly African-Americans, by City of Akron police officers;

d.  the failure to properly discipline, supervise, monitor, counsel and otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution; and/or

e.  the failure to properly train and supervise City of Akron police officers with regard to *inter alia* discharging weapons at civilians, particularly at African-Americans, and the open carry and concealed carry laws of the State of Ohio.

111.    The aforementioned de facto policies, practices, and customs of the Akron Police Department include a pattern of acts of excessive use of force and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

112.    The Akron Police Department has engaged in little or no meaningful investigation or disciplinary action in response to this pattern of misconduct, thereby creating a culture or climate where members of the police department can and do escape their acts of misconduct with impunity.

113.    This pattern is the moving force behind the conduct of the Defendant Officers in unjustified shooting of Latrent Redrick and Jamon Pruiett – who did not present a threat at the time of the shooting. This event is not an isolated incident of unconstitutional policing within the City of Akron by its officers.

15

114. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have engaged in misconduct.

115. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

116. That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

117. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Latrent Redrick and Jamon Pruiett because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

118. But for the belief that they would be protected – both by fellow officers and by the City of Akron Police Department – from serious consequences, Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiffs.

16

119.    The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant Officers to commit the acts alleged in this complaint against Plaintiffs.

120.    The City of Akron therefore acted as the moving force behind and the direct and proximate causes of the violations of Latrent Redrick's and Jamon Pruiett's constitutional rights and all injuries and damages suffered by them.

### PRAYER FOR RELIEF

Plaintiffs demand that judgment be entered in their favor on all counts and prays the court to award the following relief:

a.     An award of actual and/or compensatory damages against all Defendants in an amount to be determined at trial that will fully and fairly compensate Plaintiffs for the injuries and damages they suffered;

b.     An award of punitive damages against Defendant Officers in an amount to be determined at trial that will serve to adequately punish and deter the acts and omissions alleged in this complaint;

c.     Declaratory and injunctive relief against the City of Akron enjoining policies, practices, and customs shown to encourage the use of excessive and unreasonable force, false arrest, and malicious prosecution against civilians, particularly African-Americans, and ordering the institution of policies, procedures, and training for the Akron Police Department to bring them into compliance with constitutional standards;

d.     An award of attorneys' fees and the costs of this action pursuant to 42 U.S.C. Section 1988; and

e.     All such other relief to which Plaintiffs are entitled and/or this Court deems equitable.

### TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.

Dated: September 30, 2018                    /s/ Sarah Gelsomino
                                            Sarah Gelsomino (0084340)

17

Jacqueline Greene (0092733)
Terry Gilbert (0021948)
FRIEDMAN & GILBERT
55 Public Square, Suite 1055
Cleveland, Ohio 44113
P (216) 241-1430
F (216) 621-0427
sgelsomino@f-glaw.com
jgreene@f-glaw.com
tgilbert@f-glaw.com


SYDNEY S. SAFFOLD (0093974)
**SAFFOLD LAW, LLC**
1220 West 6th Street, Suite 303
Cleveland, Ohio 44113
(216) 622-2700
(216) 622-2714 (fax)
sydneysaffold@gmail.com

***Counsel for Plaintiffs***

18